# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **Case No: 18-cr-00041 (APM)** |
| | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| | **:** | |
| **JESSICA FORD,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to issue an Order detaining the defendant without bond.  The government presently seeks the defendant's continued detention pending trial in this matter because she is a danger to the community and presents a serious risk of flight.

## I.    LEGAL PRINCIPLES GOVERNING REQUESTS FOR DETENTION

The Bail Reform Act lists four factors that guide a court's pre-trial detention decision: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  See 18 U.S.C. § 3142(g).

When the government seeks to detain a defendant on the ground that she is a risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A), the government must demonstrate the defendant's flight risk by a preponderance of the evidence.  United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir.

1996).   Moreover, at a detention hearing following indictment, the government may present

evidence by way of proffer.  <u>United States v. Smith</u>, 79 F.3 1208, 1209-10 (D.C. Cir. 1996).

## II.      FACTUAL PROFFER OF THE EVIDENCE SUPPORTING THE CHARGES AGAINST FORD

Under 18 U.S.C. §§ 111(a)(1) and (b), a person commits Resisting or Impeding Certain Officers or

Employees of the United States when the person forcibly resists, opposes, impedes, intimidates, or

interferes with a United States Secret Service Uniformed Division ("USSS/UD") officer while the officer

is engaged in or on account of the performance of official duties, and in the commission of such act, uses a

deadly or dangerous weapon.

Under 18 U.S.C. § 1361, a person commits Injuring Property or Committing Any Depredation

Against Property of the United States when the person willfully injures or commits any depredation against

any property of the United States.

Under 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A), a person commits Engaging in Physical Violence

Against Property in Restricted Grounds While Using a Deadly or Dangerous Weapon when the person

knowingly engages in any act of physical violence against restricted grounds and during and in relation to

such an offense, uses a deadly or dangerous weapon.

### Jessica Ford's Crimes at the White House Complex

On Friday, February 23, 2018, at approximately 2:45 p.m., a white Chevrolet van approached the

White House complex security barrier located at 1699 E Street, NW, in Washington D.C.  The driver and

sole occupant of the vehicle was later identified as the defendant, Jessica Ford ("Ford").  The security

barrier consists of a security post with wedge barriers on either side restricting ingress and egress.

According to surveillance video and witness statements, as the vehicle approached the security barrier,

Secret Service Officer Michael Hagan exited the security post and instructed pedestrians to clear the

crosswalk.  After allowing pedestrians to clear the road, Ford accelerated and crashed the vehicle into the

wedge barrier to the right of the security post.

Officer Hagan then instructed Ford to exit the vehicle. Ford did not comply with these commands. Instead, Ford placed the vehicle into reverse and proceeded to drive into the wedge barrier approximately two more times. Officer Technician Canine Handler Michael Cooley responded to the scene and was positioned on the other side of the wedge barrier while Ford continued to accelerate the vehicle into the barrier. Officer Cooley also instructed Ford to exit the vehicle and turn the engine off. Instead of complying with the officers' commands, Ford engaged the vehicle's accelerator, causing the vehicle's tires to spin in place on the pavement and generate smoke.

Officers Hagan and Cooley attempted to open the vehicle door but the door would not open. Officer Hagan then observed what appeared to be a black handgun in Ford's hands. Ford was grasping the handle of the handgun, with the barrel facing the windshield. Officer Hagan directed Ford to drop the handgun multiple times. Ford did not comply with these instructions. Officer Hagan reached through the vehicle's driver-side window and removed the gun from Ford's hands. Officers then removed Ford through the vehicle's driver-side window. Ford told officers that she had come to the White House to visit her husband James Burris, who she asserted lived in the White House with her children.

USSS recovered Ford's handgun, which was later determined to be a Daisy Powerline Model 340 BB gun. The gun resembled in color, shape, and other outward appearances a Beretta 9mm pistol. Witness statements reveal that responding officers believed the handgun to be real while it was in Ford's hands.

Under federal law, an imitation gun, when used in circumstances such as those described herein, qualifies as a dangerous weapon. See, e.g., McLaughlin v. United States, 476 U.S. 16 (1986) (unloaded handgun is dangerous weapon within meaning of federal bank robbery statute); United States v. Medved, 905 F.2d 935, 939-40 (6th Cir. 1990) (realistic toy gun used during bank robbery is dangerous weapon or device satisfying sentencing enhancement since use of toy gun subjected victims to apprehension, required law enforcement to formulate response to counter apparent threat to human life, and created likelihood that police response would include deadly force and increase risk to victims, bystanders, and perpetrators); United States v. Gomez, 879 F.2d 256, 259 (7th Cir. 1989) (functionality of weapon  not prerequisite to

weapon's dangerousness because, regardless of functionality, weapon instills fear and creates immediate danger that violent reaction will ensue).

Additionally, a motor vehicle can qualify as a deadly weapon. See United States v. Arrington, 309 F.3d 40, 45 (D.C. Cir. 2002); Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992); United States v. Sanchez, 914 F.2d 1355 (9th Cir. 1990), cert. denied, 499 U.S. 978 (1991).   For a vehicle to qualify as a deadly weapon, "the defendant must use it as a deadly weapon and not simply as a mode of transportation." Arrington, 309 F.3d at 45.  Here, the white Chevrolet van was not used as a means of escape but rather was used as a tool to break through a security barrier.  Moreover, Ford accelerated toward the barrier while an officer was on the opposite side of the barrier.

### Ford's Previous Breach of Security

Ford is known to USSS.  On April 16, 2017, Ford attempted to jump over a security barrier at the White House complex. [1]  On that date, Ford ran toward the White House fence, placed both hands on top of the security barrier, and began to lift herself over the barrier, at which time she was apprehended by USSS officers and placed under arrest.  On May 16, 2017, after scaling a temporary security barrier on the White House complex, Ford was apprehended while attempting to pull herself over the White House fence. On July 6, 2017, Ford was again observed on the White House complex and was placed under arrest.  While being transported to the Second District Police Station, Ford informed officers that she was going to keep returning to the White House despite being arrested.

### Ford's Refusal to Abide by Court Orders

After her arrest on April 16, 2017, Ford was charged in the Superior Court of the District of Columbia with Unlawful Entry, in violation of 22 D.C. Code § 3302 (2001 ed.) (Criminal No. 2017-CMD-006517).  On April 17, 2017, as a condition of her pretrial release, Ford was issued an order, which she signed, to stay away from the "White House Complex, bounded by I Street NW/ 14th Street NW/ Constitution Ave NW/ 18th Street NW."

---

[1] Facts are derived from Gerstein affidavits filed in the respective cases.

On May 16, 2017, Ford was charged in the Superior Court of the District of Columbia with Unlawful Entry, in violation of 22 D.C. Code § 3302 (2001 ed.) and Contempt, in violation of 23 D.C. Code § 1329 (2001 ed.) (Criminal No. 2017-CMD-008488).   On May 17, 2017, Ford again signed an order agreeing to stay away from the "White House complex, the area bounded by: I Street NW, 14th Street NW, Constitution Ave NW, and 18th Street NW."

After once again returning to the White House complex on July 6, 2017, Ford was charged with Contempt, in violation of 23 D.C. Code § 1329. (2001 ed.) (Criminal No. 2017-CMD-011644).   On September 7, 2017, Ford pleaded guilty to Unlawful Entry and Contempt and was sentence to 120 days incarceration, execution of sentence suspended as to all, with one year of supervised probation.  The terms of Ford's probation included a stay away from the White House complex.  Ford violated the terms of her probation when she returned to the White House complex on February 23, 2018.

## **ARGUMENT**

Under the factors set forth in 18 U.S.C. § 3142(g), the government has demonstrated beyond a preponderance of the evidence that the defendant is a danger to the community and a flight risk.

### A.  **The Nature and Circumstances of the Offense**

These offenses are serious within the meaning of § 3142(g)(1).  By its express terms, § 3142(g)(1) focuses on "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or controlled substance, firearm, explosive, or destructive device."  18 U.S.C. § 3142(g)(1) (emphasis added). All three charges in the indictment are crimes of violence as each offense has as an element the use, attempted use, or threatened use of physical force against the person or property of another. See 18 U.S.C. §§ 16(a) and (b).

A consideration of the nature and circumstances of the offense also requires the Court to weigh the possible penalty the defendant faces upon conviction.  See United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990); see also United States v. Geerts, 629 F. Supp. 830 (E.D. Pa. 1985) (defendant facing prospect of 50 years of incarceration was a risk of flight).

Here, the seriousness of the defendant's crimes is reflected in the possible sentence she would face if convicted.  If the defendant is convicted of an offense under 18 U.S.C. §§ 111(a)(1) and (b), the maximum sentence of imprisonment is 20 years.  If she is convicted of an offense under 18 U.S.C. § 1361, and the damage to such property exceeds $1,000, the maximum sentence is imprisonment of 10 years.  And under 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A), if convicted, the maximum sentence is 10 years.

### B.  The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Defendant's Release

As discussed above, defendant has demonstrated a determination to return to the White House complex regardless of court orders instructing her not to do so.  Ford has violated numerous court orders and disregarded admonishments by law enforcement instructing her to stay away from the White House complex.  Indeed, in July 2017, Ford warned officers that she will not be deterred from returning to the complex.  Defendant's escalating efforts to gain entry to the White House— now using a vehicle to ram a gated entrance—pose a risk to herself, to law enforcement, and to the public.

### C.  The Weight of Evidence Against the Defendant

The evidence of the defendant's crimes on February 23, 2018 is irrefutable.  The crimes were caught from multiple viewpoints on surveillance video. The video clearly shows the defendant crash the white van into the wedge barrier.  The surveillance video then captures Ford accelerate the vehicle toward the barrier while Officer Cooley was positioned on the other side of

the wedge.  Witness statements similarly demonstrate that Ford was given multiple commands to exit the vehicle and instead continued to accelerate into the wedge barrier.  The defendant's BB gun was recovered and closely resembles a semi-automatic handgun.

### D.  <u>The History and Characteristics of the Defendant</u>

The defendant's personal characteristics similarly weigh in favor of pre-trial detention. Pertinent characteristics include "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."  18 U.S.C. § 3142(g)(3)(A).

The defendant resides in La Vergne, Tennessee.  The Government is not aware of any significant ties between the defendant and Washington, D.C.   Moreover, the defendant has repeatedly violated court orders.  Since April 2017, the Superior Court of the District of Columbia has ordered Ford to stay away from the White House three times.  Ford has violated all three court-ordered stay aways, most recently when she violated the terms of her probation by returning to the White House on February 23, 2018.

### <u>CONCLUSION</u>

For the foregoing reasons, as well as those that will be set forth at a hearing on this motion, the government respectfully submits that there exists no condition or combination of conditions which would assure the return of this defendant to all future court appearances and the safety of any person or the community.  Accordingly, the government requests that the Court order the pre-trial detention of the defendant.

Respectfully submitted,


JESSIE K. LIU
United States Attorney


By:                   _____/s/_____
                                Alexandra Hughes
                                Special Assistant United States Attorney
                                Virginia Bar 91593
                                National Security Section
                                United States Attorney's Office
                                555 Fourth Street, N.W., 11th Floor
                                Washington, DC 20530
                                (202) 252-6837
                                Alexandra.Hughes2@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that a true and accurate copy of the Government's Memorandum in Support of Pre-trial Detention was served upon Mary Petras., counsel for the defendant, via email, this 28th day of February, 2018.


                                    _____/s/_____
                                      Alexandra Hughes
                                      Special Assistant United States Attorney